### 44377. BARBER v. BARBER.
(360 SE2d 574)

GREGORY, Justice.

Appellant Charlene A. Barber filed a divorce action against appellee Ronald L. Barber. Following a jury trial in which issues of alimony, child support and equitable division of property were litigated, we granted appellant's application to appeal, OCGA § 5-6-35 (a) (2).

1. Appellant complains that the trial court erred in sequestering her during the testimony of her witnesses. The record shows that after appellee moved for sequestration of the appellant, the trial court offered the appellant the option of testifying first and remaining in the courtroom during the testimony of her witnesses, or remaining outside the courtroom until such time as she chose to testify. Appellant's attorney stated that he had "other witnesses [he] felt obligated to accommodate" and that it would be "inconvenient" to have appellant testify first. Appellant remained outside the courtroom until such time as she elected to testify.

It has been generally held that the rule of sequestration, OCGA § 24-9-61, does not apply to a party to the case. *Ga. R. Co. v. Tice*, 124 Ga. 459 (52 SE 916) (1905); *Ross v. Rich's*, 129 Ga. App. 716 (201 SE2d 159) (1973). However, the cases also recognize that where the plaintiff elects to call his own witnesses before testifying himself, the trial court has a broad discretion to require either that the plaintiff testify prior to presenting the testimony of his witnesses, *Tift v. Jones*, 52 Ga. 538, 542-3 (1874); *Boutelle v. White*, 40 Ga. App. 415 (149 SE 805) (1929), or that the plaintiff be excluded from the courtroom prior to the time he chooses to testify. *Ross v. Rich's*, supra; *Davis v. Atlanta Coca-Cola Bottling Co.*, 119 Ga. App. 422 (167 SE2d 231) (1969); *King v. Faries*, 120 Ga. App. 393 (170 SE2d 747) (1969); *Purvis v. Tatum*, 131 Ga. App. 116 (205 SE2d 75) (1974).

We hold that under the circumstances of this case the trial court did not abuse its discretion in offering the appellant the option of testifying first or remaining outside the courtroom until she chose to testify. Further, we find that appellant has not demonstrated that she was harmed by not being in the courtroom during the presentation of her witnesses. See *Sun v. Bush*, 179 Ga. App. 80 (5) (345 SE2d 85) (1986).

2. The issue of child custody had not been resolved by the trial court by the conclusion of the evidence. Appellant argues the trial court erred in failing to provide the jury with alternate verdict forms as required by *Curtis v. Curtis*, 255 Ga. 288 ( 336 SE2d 770) (1985).

In that case we held that where the issue of child custody is unresolved at the end of the evidence, or where the trial court does not wish to inform the jury of its decision as to child custody, alternate verdict forms, stating the amount of child support to be paid in the event either parent is awarded custody, should be provided to the jury. It is conceded alternate forms were not provided in this case. We find, however, that any error in failing to provide alternate verdict forms is rendered harmless by the jury's verdict that "In the event [appellant] is awarded custody of the minor child, the [appellee] shall pay [her] the sum of $600 a month commencing June 1, 1985 . . . until the child is 18. During this period of time the [appellee] shall also pay tuition for the child . . . limited to $5,000 annually."

3. Appellant alleges error in the trial court's failure to charge that "Both parties in this case are seeking a division of the property accumulated during the marriage. Neither party has any greater burden of proof than does the other party as to this issue, and you would not require either party to preponderate in the evidence as to this issue."

We hold the court correctly charged that the party claiming a right, including property division, has the burden of proof to establish that right. To hold that the burden rests equally on each party as to an issue runs the risk of neither party prevailing on that issue and the ultimate dilemma of an unresolved dispute. In this case one party claimed that property should be equitably divided according to plan A. The other party contended it should be divided according to plan B. Each had the burden to prove entitlement to equitable division according to his or her plan. If both fail to meet their separate burdens, then neither is entitled to equitable division, and their ownership of property remains as it existed before trial.

4. Appellant's final allegation is that the trial court erred in refusing to charge the jury that "in considering the total needs and circumstances of the wife, you may also consider the needs and circumstances of her minor children who live with her in her care and custody even though these minor children are not the children of the Husband in this case." With this we disagree.

There was evidence before the jury that appellant has a son by a former marriage, and that appellant receives no child support from the child's natural father.

The charge requested is an incorrect statement of the law because it is not the needs of the spouse's minor child which the jury may consider. Instead, it is the extent to which the spouse contributes to those needs which the jury may take into account in determining the amount of alimony, if any, to be awarded to the spouse. *Kosikowski v. Kosikowski*, 240 Ga. 381, 382 (240 SE2d 846) (1977). The requested charge would have the effect of telling the jury to look to the needs of a child for whom appellee has no responsibility and add a

sum to alimony to be paid by appellee sufficient to supply those needs. But the rule of law is simply that one of the many circumstances a jury may consider in fixing alimony is an expense a spouse has for the support of another.

5. The appellee moved to dismiss this appeal under *Curtis v. Curtis*, 255 Ga., supra, claiming that all terms of the final judgment have been complied with, and that by accepting relief under the judgment, appellant has waived her right to complain of it. As there is nothing in the record before us to support this contention, the motion to dismiss is denied.

*Judgment affirmed. All the Justices concur, except Marshall, C. J., Smith and Bell, JJ., who dissent.*

SMITH, Justice, dissenting.

In *Tift v. Jones*, 52 Ga. 538 (1874), the Court, without citation of authority, indicated that when a party intends to be a witness, "it would be a proper rule that such party should be first examined, unless there be reasons to the contrary, in the absence of his other witnesses. This would preserve his right to be present in the court during the whole trial of his case." Three years later, the 1877 Georgia Constitution included: "Par. IV. *Right to the Courts*, No person shall be deprived of the right to prosecute or defend his own cause in any of the Courts of this State, in person, by attorney, or both."[1] This constitutional provision which provided, for the first time, that each person has the right to "prosecute or defend his own cause" effectively overruled *Tift* and its "proper rule." It is virtually impossible for one to prosecute or defend his own case without being present in the courtroom. Thus what the court in 1874 considered the "proper rule" was overruled.

The fact that *Tift* was overruled by the constitutional provision can be seen in a later case in which the Court, with the knowledge of the constitutional provision, reversed the lower court ruling in which the real party at issue with the plaintiff was sent, over objection, from the courtroom. The Court stated that "[a]s she was in fact a party to the issue on trial, it was her *right to be present*; and it was, therefore,

---

[1] "Small's A Stenographic Report of the Proceedings of the Constitutional Convention Held in Atlanta, Georgia, 1877 (Constitution Publishing Company, Atlanta, 1877) reflects the adoption of the language in 1877 as the proposal of Mr. Tift, who explained it as follows (p. 94): 'Mr. Tift. . . . It is very important that every person shall be permitted to prosecute or defend his own case in any of the courts of this state . . . . I think, in every case, the person should have the right to appear himself, and by attorney also . . . . Upon the division the vote was -[ayes] 101; noes 29. So the amendment was received . . . .' In light of the above and considering the prior constitutional history of this subject we view the present provision of the Constitution as primarily intended to guarantee the right of self-representation in the courts of this State . . . ." *Bloomfield v. Liggett & Myers, Inc.*, 230 Ga. 484 (198 SE2d 144) (1973). See also *Dobbins v. Dobbins*, 234 Ga. 347 (216 SE2d 102) (1975).

*manifestly erroneous to exclude her* from the court-room." (Emphasis supplied.) *St. Paul Fire &c. Ins. Co. v. Brunswick Grocery Co.*, 113 Ga. 786, 789 (39 SE 483) (1901). Four years later in *Ga. R. &c. Co. v. Tice*, 124 Ga. 459, 465 (52 SE 916) (1905), this Court restated its position when it held that "[t]he rule in reference to the sequestration of witnesses *does not apply where the witness is a party . . . .*" It is apparent from reading both opinions that the Court did not recognize *any discretion* on the part of the trial judge to oust a party/witness from the courtroom. Later, this Court explained that trial judges do have discretion with regard to witnesses, but not party/witnesses when it stated, "[t]he exclusion of Dan R. Groover from the courtroom as a witness was a matter of discretion for the court. Had Dan R. Groover *caused himself to be made a party he could have remained within the court-room as a matter of right. St. Paul Fire & Marine Ins. Co. v. Brunswick Grocery Co.*, 113 Ga. 786 (39 S. E. 483); *Georgia R. &c. Co. v. Tice*, 124 Ga. 459 (52 S. E. 916)." (Emphasis supplied.) *Groover v. Simmons*, 161 Ga. 93, 97-98 (129 SE 778) (1925). This Court's position and the Court of Appeals' holding in *Knox v. Harrell*, 26 Ga. App. 772 (108 SE 117) (1921), were muddled for the first time in *Boutelle v. White*, 40 Ga. App. 415 (149 SE 805) (1929). The Court of Appeals, in an apparent effort to overrule *Knox v. Harrell*, supra; *Groover v. Simmons*, supra, and the cases cited therein, acknowledged that the "trial judge has no right to exclude from the court-room, during the taking of testimony, a party to the case on trial . . . . [but, it then went on to state that i]t is a matter entirely within the discretion of the trial judge as to whether he will require that the testimony of a party to the case be taken before the taking of the testimony of the party's witnesses. [Cit.]" This, of course, is a contradiction in terms, an attempt to revive a case that had been overruled by the constitution, and an attempt to overrule several Supreme Court and Court of Appeals decisions. If the trial judge has "no right to exclude" a party/witness he, therefore, has no discretion to force the party/witness to remain outside of the courtroom if he chooses not to be the first to testify. It is upon this erroneous Court of Appeals case that the majority relies.

Our constitution provides that the right to trial by jury is to remain inviolate, Georgia Constitution, Art. I, Sec. I, Par. XI, and no person shall be deprived of the right to prosecute or defend, either in person or by an attorney, the person's cause of action. Georgia Constitution, Art. I, Sec. I, Par. XII. When Mrs. Barber was removed from the courtroom she was denied both of these valuable constitutional rights. "The presence of counsel [is] no substitute for that of the man on trial. Both should [be] present. [Cits.]" *Wilson v. State*, 87 Ga. 583, 584 (13 SE 566) (1891). A party to a civil case should not be forced to leave during the trial of her case any more than the accused

in a criminal case should be forced to leave during the trial of his case.

In a jury's quest for truth the jury is called upon to observe the courtroom demeanor of the parties and witnesses. There was no way for the jury to observe the demeanor of Mrs. Barber during her forced absence. The trial lasted from May 28, 1985 to June 6, 1985. What was the jury's perception of her absence? It is difficult to imagine that a jury would be favorably impressed by a party who is absent. The jury might very well have thought that her absence was caused by a wrong she had committed. Furthermore, she could not assist her attorney during the case while she was outside of the courtroom. Her absence from the courtroom while other witnesses were testifying eliminated her attorney's ability to rely on her insight and comments in framing questions that would elicit the information she needed to have before the jury for the whole truth to be before them. She was unable to know when to tell her attorney that a witness was relating less than the truth. In divorce cases, especially, the witnesses called by one party are usually friends of both parties. The witnesses in this case testified under the watchful eye of Mr. Barber, but Mrs. Barber was unable to see the witnesses, and they did not have to face her as they testified. There is no doubt that it is more difficult for friends of both parties to be as fair as they would like to be when face-to-face with one party but not the other. Unquestionably it would encourage anyone who wished to "play around" with the truth to be less than honest when one party is absent.

Mrs. Barber should have been able to face her accuser — yes, her accuser. If her husband was called to the stand for the purpose of cross-examination of the opposite party he could launch into a series of accusations and she would not be present to inform her attorney as to any perceived untruths, half truths, or mistakes.

The fact that a witness remains in the courtroom "goes to that witness' credibility" and not to his competency. It is absurd to deny Mrs. Barber's constitutional right "to prosecute or defend" her own cause of action by forcing her out of the courtroom when her presence would only go to her credibility as a witness and not to her competency. A party/witness should not be forced from the courtroom because another party invokes the rule.

The part of the majority opinion that states that she did not show that she had been harmed begs the question. It amazes me that anyone would contend that being absent from the courtroom when one is the plaintiff in a divorce suit is harmless. Why do parties come to court? To present their claim and protect their rights through their cause of action. One cannot accomplish those purposes during a forced absence. To allow trial judges to force party/witnesses to remain outside of the courtroom during the trial of their case is to place

this Court's stamp of approval on a denial of a party's constitutional rights and a denial of fundamental fairness.

A trial judge has discretion in administering the rule of sequestration in cases in which a witness is not a party to the case, but when the witness is a party, the party's constitutional right to a jury trial and to prosecute her claim is paramount.

I am authorized to state that Chief Justice Marshall and Justice Bell join in this dissent.

DECIDED SEPTEMBER 24, 1987 —
RECONSIDERATION DENIED OCTOBER 14, 1987.

*Glenville Haldi,* for appellant.
*Casper Rich,* for appellee.